Filed 6/20/25  In re D.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.D. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E085682 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J300583 & J300584) |
| v. | OPINION |
| F.P., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Conditionally reversed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Joseph R. Barrell, Deputy County Counsel for Plaintiff and Respondent.

1

Defendant and appellant (Mother) appeals after the termination of her parental rights to D.D.[1] (a boy, born March 2024), and A.C. (a girl, born February 2021; collectively Minors), at a Welfare and Institutions Code section 366.26[2] hearing. On appeal, Mother raises one claim that the matter must be remanded to the juvenile court based on the lack of substantial evidence that the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) did not apply. She claims that plaintiff and respondent San Bernardino County Children and Family Services (CFS) and the juvenile court did not adequately perform their initial duty of inquiry required by section 224.2, subdivision (b)(2); by CFS failing to inquire of an alleged father of D.D. regarding Indian ancestry; and the juvenile court failed to inquire of a maternal uncle who appeared at the section 366.26 hearing. Further, there is insufficient proof of the information CFS gathered and provided to the Bureau of Indian Affairs (BIA), Cheyenne and Cherokee tribes showing that it complied with the requirements of sections 224.2, subdivision (e), 224.3, subdivision (a), and California Rules of Court rule 5.481(a)(5) in giving notice to these tribes.

---

[1] D.D. was also referred to as D.P. in the record but the name on his birth certificate was D.D.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL HISTORY

### A. DETENTION

In March 2024, Mother gave birth to D.D. Mother tested positive for methamphetamine. D.D.'s drug results were pending but he was receiving care in the neonatal intensive care unit. D.D. was to remain in intensive care as he was not feeding appropriately.

Mother advised CFS that she had used methamphetamine during the first three months of her pregnancy. She drank alcohol—a bottle of hard liquor each day—up until the seventh month of her pregnancy. Mother was homeless. Mother reported that she had another daughter, A.C., who was currently living with her godmother. Mother identified R.H. as D.D.'s alleged father and N.J.C. as A.C.'s alleged father. The alleged fathers were not involved in the lives of their children. N.J.C. was incarcerated and R.H.'s whereabouts were unknown.

Mother reported that she had lost custody of three other children born in 2005, 2012 and 2013. Two other children were in the custody of L.G. who was seeking legal guardianship of the two children. She had a history of domestic violence with both R.H. and N.J.C. Mother also reported a history of mental health issues including bipolar disorder, but insisted she had resolved her mental health issues. She had no provisions for the care of D.D. should he be released from the hospital. Mother had limited contact with Minors' siblings. Mother had an extensive criminal history.

D.D.'s drug test results were received and he tested positive for methamphetamine, amphetamine and THC. A detention warrant for Minors was issued on April 4, 2024, and they were both detained. A.C. was placed in a foster home; D.D. remained in the hospital.[3]

On April 1, 2024, Mother advised CFS that she had Indian ancestry but was not sure of the name of the tribe. CFS was unable to inquire with R.H. as his whereabouts were unknown. N.J.C. denied any Indian ancestry. Paternal grandfather (L.G.) denied any Indian ancestry. Maternal grandmother L.R. (MGM) initially denied any Indian ancestry.

On April 8, 2024, section 300 petitions were filed against Mother (petitions) for Minors. R.H. was identified as the alleged father of D.D., and N.J.C. was identified as the alleged father of A.C. It was alleged under section 300, subdivision (b), that Mother (b-1) had an ongoing substance abuse problem that impacted her ability to provide for and protect Minors; (b-2) she was homeless and could not provide a stable home for Minors; (b-3) she had a substantial criminal history including domestic violence, burglary and vehicle theft; (b-4) she had a history of mental illness which affected her ability to adequately and appropriately protect Minors; and (b-5) she had a history of domestic violence with alleged father, R.H. It was alleged pursuant to section 300, subdivision (j),

---

[3] We note that section 224.2, subdivision (b)(2), was amended, effective September 27, 2024, while this case was ongoing, to include that the initial duty of inquiry is applicable to those placed into protective custody pursuant to section 340. (Stats.2024, c. 656 (A.B. 81), § 3, eff. Sept. 27, 2024.)

4

that Minors' half-siblings were previously removed from Mother's custody as a result of neglect and her parental rights were terminated.

Mother was present at the detention hearing held on April 9, 2024. Mother advised the trial court "[m]y mom is Indian. She is 25 percent Indian. I don't know exactly what tribe." Mother identified R.H. as D.D.'s father. They were not married and did not live together. R.H. was not listed as D.D.'s father on the birth certificate. Mother did not know if there was Indian ancestry on N.J.C.'s side of the family. The juvenile court found a prima facie case was established and Minors were detained.

Mother completed an ICWA-020 form stating that one of her parents or grandparents was a member of a federally recognized tribe but the name of the tribe was unknown.

### B. JURISDICTION/DISPOSITION REPORT AND HEARING

The jurisdiction/disposition report filed on April 26, 2024, recommended no reunification services be granted to Mother and R.H.; N.J.C. would receive services for A.C. D.D. had been released from the hospital, and Minors were placed together in a foster home. CFS recommended no reunification services for Mother based on the prior termination of parental rights for Minors' siblings and her chronic substance abuse. CFS provided additional information regarding the termination of parental rights for Minors' siblings. CFS recommended that the juvenile court find all of the allegations in the petitions to be true.

Mother reported using methamphetamine regularly since she was 16 years old. On April 22, 2024, she tested positive for amphetamines. CFS stated that Mother had failed to benefit from previous family reunification services and recommended that services be denied. CFS recommended that R.H. be named the alleged father of D.D. and that services be denied to him. His whereabouts were unknown.

As for ICWA inquiry, CFS was continuing to inquire with Mother's relatives. MGM had named the Chichiwaka tribe but CFS could not find such named tribe. MGM then provided the names of the Chichimeca and Zacatecas tribes, which were Mexican Indian tribes. Her ancestry came from maternal great-grandfather. A maternal aunt had denied any Indian ancestry. Paternal grandfather L.G. had denied Indian ancestry. N.J.C. claimed Indian ancestry but refused to name the Indian tribe that he was a part of.

The jurisdiction/disposition hearing was set contested on April 30, 2024. Addendum reports were provided by CFS before the contested hearing. Mother had completed some individual therapy and domestic violence classes. She did not attend any parenting classes. Mother had not enrolled in any substance abuse programs. She tested positive for amphetamines on June 4, 2024. She was a no-show for tests on four other occasions. CFS recommended that the juvenile court find that ICWA may apply.

The jurisdiction/disposition hearing was held on July 2, 2024. Mother was present. The juvenile court found the allegations in the petitions true for Minors. Mother objected to both the jurisdiction and disposition recommendations but had no evidence to present. Mother had entered an inpatient drug treatment program. Mother provided that Da.D. was listed as D.D.'s father on the birth certificate but she was sure he was not

6

D.D.'s father. The juvenile court continued the disposition hearing in order to investigate Da.D.

Mother provided documentation of her completion of 41 days of residential drug treatment. Mother had also been participating in other services. CFS was unable to find Da.D.

The disposition hearing was held on August 28, 2024. Mother's counsel argued that Mother should be granted reunification services based on her participation in a residential drug treatment program. She had six negative drug tests while at the facility. CFS recommended denial of services based on her long-term substance abuse and failure to reunify with her other children.

The juvenile court found that Minors may come under the provisions of ICWA. R.H., N.J.C. and Da.D. all were alleged fathers who were not entitled to reunification services. Placement of Minors outside the home was appropriate and necessary. Mother and the alleged fathers were denied reunification services. The matter was set for an ICWA notice review and a section 366.26 hearing.

C.   ICWA NOTICE

On October 4, 2024, CFS provided additional information regarding ICWA notice to the juvenile court. N.J.C. now denied any Indian ancestry. On October 3, 2024, a social worker spoke with MGM. Maternal grandfather advised the social worker he had no Indian ancestry. MGM reported being part of the Chichiwaka tribe from Mexico. A maternal aunt, J.P., reported she only knew that she was part of the Chichimeca tribe. Another maternal aunt, C.F., also reported having Indian ancestry but did not know the

7

name of the tribe.  Mother provided a number for the mother of alleged father, Da.D.  Da.D. and his mother denied any Indian ancestry.

Mother for the first time provided the name of H.V.[4] as an alleged father, and that she would like him to take a DNA test to determine whether he was D.D.'s father.  CFS also noted that the family had identified as having Cherokee and Cheyenne ancestry in the prior proceedings involving Minors' siblings.  Notice for those tribes was sent to the Bureau of Indian Affairs (BIA), Cherokee Nation, Easter Band of Cherokee Indians, United Keetoowah Band of Cherokee Indians in Oklahoma, Cheyenne and Arapaho Tribes, Cheyenne River Sioux Tribe of the Cheyenne River Reservation and Northern Cheyenne Tribe of Northern Cheyenne Indian Reservation.  Certified mail receipts for the above tribes were provided.

The ICWA review hearing was continued on October 15, 2024.  The continuance was based in part on the naming of the additional alleged father, H.V.  Mother filed a section 388 petition seeking to have Minors placed with the godmother of A.C., who had already been rejected for placement.  The section 388 petition was denied without hearing for failing to show changed circumstances.

CFS served H.V. with notice of the section 366.26 hearing.  Service was made by personal service on November 8, 2024, at Central Detention Center in Rialto, where H.V. was incarcerated.

---

[4]  Mother originally identified him as H.H.

On December 4, 2024, CFS filed a section 366.26 report[5] updating the juvenile court on the ICWA notice. CFS noted that none of the alleged fathers of D.D.—H.V., Da.D. and R.H.—had completed ICWA-020 forms. The Eastern Band of Cherokee Indians, Cheyenne, and Arapaho tribes responded that Minors were not tribal members nor were they eligible for enrollment. The remaining tribes served, including the BIA, had not responded but there was proof they had received the notice from CFS.

On December 12, 2024, the matter was called for the continued ICWA review hearing. No further information was provided to the juvenile court and it found that ICWA did not apply.

D.    SECTION 366.26 REPORT/HEARING

In the section 366.26 report, CFS recommended that parental rights for Mother be terminated and Minors be freed for adoption by the current caregivers. H.V. was named as an alleged father of Minor, along with Da.D. and N.J.C. Minors remained in the home of the foster parents in which they were originally placed; the foster parents sought to adopt Minors. At the prior hearing addressing ICWA notice, CFS reported that alleged fathers Da.D. and R.H. could not be located. They were served by publication. As for H.V., he was personally served with notice of the section 366.26 hearing. The juvenile court found that notice for the section 366.26 hearing was complete for the three alleged fathers of D.D.

---

[5] We will address the report as it pertains to the recommendation for the resolution of the section 366.26 hearing, *post.*

9

The section 366.26 hearing was held on March 12, 2025. Mother was present along with an unnamed maternal uncle. Mother objected to the termination of her parental rights. The juvenile court terminated Mother's parental rights to Minors. The parental rights of R.H., Da.D. and "all unknown fathers are terminated." Minors were freed for adoption. Mother filed her notice of appeal on March 12, 2025.

## DISCUSSION

Mother contends conditional reversal and remand to the juvenile court is necessary based on the failure of CFS to adequately perform its duty of inquiry pursuant to the requirement of section 224.2, subdivision (b)(2). Mother insists that CFS and the juvenile court had a duty to further inquire of a maternal uncle who was present at the section 366.26 hearing and inquire of the alleged father H.V.

A.      <u>APPLICABLE FEDERAL AND STATE ICWA LAW</u>

" 'Notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.' " (*In re S.R.* (2021) 64 Cal.App.5th 303, 313.) " 'ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child. [Citation.] Federal regulations implementing ICWA, however, require that state courts "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." ' . . . . [¶] . . . 'ICWA provides that states may provide "a higher

10

standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under" ICWA.' " (*In re J.S.* (2021) 62 Cal.App.5th 678, 685.)

Under California law, section 224.2 "codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1132 (*Dezi*), fn. omitted.) The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) The current version of section 224.2, subdivision (b)(2) provides, "The duty to inquire begins for a county when first contacted regarding a child, including, but not limited to, asking a party reporting child abuse or neglect whether the party has any information that the child may be an Indian child, and upon a county department's first contact with the child or the child's family, including extended family members as defined in paragraph (1) of subdivision (c) of Section 224.1. At the first contact with the child and each family member, including extended family members, the county welfare department or county probation department has a duty to inquire whether that child is or may be an Indian child." (§ 224.2, subd. (b)(2).) " 'Extended family member' has the same meaning as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached 18 years of age and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (§ 224.1, subd. (c)(1).)

11

"[A]n adequate initial inquiry that reaches beyond parents to extended family members and others facilitates the discovery of Indian identity, and maximizes the chances that potential Indian children are discovered and tribes are notified." (*Dezi*, *supra*, 16 Cal.5th at p. 1140.) Section 224.2 " ' does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.' " (*Dezi*, at p. 1140.) "[T]he inquiry is not concerned with the outcome, but rather with the protection of tribal rights, including the tribes' right to determine whether a child is an Indian child. '[A]bsent a reasonable inquiry at the outset, the opportunity to gather information relevant to the inquiry is often missed entirely.' " (*Id.* at p. 1144, fn. omitted.)

"When the agency has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required." (*Dezi, supra,* 16 Cal.5th at p. 1132; see also § 224.2, subd. (e)).) "The required further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services; and (3) contacting tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe. [Citation.] At this stage, contact with a tribe 'shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of [ICWA] notices,' and 'sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility

determination, as well as information on the current status of the child and the case.' " (*Id*. at pp. 1132-1133.)

"If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law (rule 5.481(a)(5)), there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Dezi*, *supra*, 16 Cal.5th at p. 1141.) "When a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial. [Citations.] '[U]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.' " (*Dezi*, at p. 1136.)

## B.    INITIAL INQUIRY UNDER SECTION 224.2, SUBDIVISION (B)(2)

We first address the failure to inquire of a maternal uncle who was present in court at the section 366.26 hearing. At the section 366.26 hearing, it was noted on the record that a maternal uncle was present with Mother. The trial court at a previous hearing had determined that ICWA did not apply to Minors. It did not make any inquiry of the maternal uncle. CFS appears to concede that the juvenile court should have spoken with the maternal uncle in court to determine if there was any Indian ancestry but contends any failure to inquire was harmless. Such concession that inquiry was required is appropriate as the maternal uncle was in court and was reasonably available to provide

13

further information to CFS and the juvenile court on Minors' Indian ancestry. CFS contends that reversal is not required as ICWA inquiry need not be exhaustive or perfect, and it is not required that all extended family members be asked about Indian ancestry. The juvenile court reached a reliable decision on ICWA even without inquiry of the maternal uncle.

CFS relies on the responses provided by other maternal relatives in arguing such failure to inquire was harmless. Two maternal aunts were asked about their Indian ancestry and one provided she was from the Chichimeca tribe and the other stated that she had Indian ancestry but was not sure which tribe. Mother stated that MGM was part of an Indian tribe but she did not know the name of the tribe. MGM provided she was part of two Mexican tribes. CFS discovered that in the prior cases involving Minors' siblings, it had been reported that the family was part of the Cheyenne and Cherokee tribes.

Based on the facts in this case, there was conflicting information regarding the Indian ancestry of Minors. There was some information that they were part of an unknown tribe. There was also information that they were part of two Mexican Indian tribes.[6] CFS also discovered that there may be some connection to the Cheyenne and Cherokee tribes. The status of Minors' Indian ancestry was not conclusive based on the varying information received from family members. While the juvenile court and CFS did make inquiries of many family members, based on the different responses we cannot

---

[6] Mother makes no claim that the Department had to contact these tribes.

14

say that inquiring of a maternal uncle, who was readily available in court, was harmless. Conditional remand for CFS to make further inquiry of the maternal uncle is appropriate in this case.[7]

Mother also claims that CFS should have inquired of alleged father H.V. whether he had Indian ancestry. Mother does not claim that H.V. should have been inquired of based on the potential of being the biological father of D.D. Instead, Mother relies on the language in section 224.2, subdivision (b)(2) that he has "an interest in the child." Mother insists that as an alleged father H.V. was a person with an interest in the child and CFS was required to inquire of him regarding Indian ancestry. CFS responds that there was no duty of inquiry for an alleged father. (See *In re E.G.* (2009) 170 Cal.App.4th 1530, 1533 ["An alleged father may or may not have any biological connection to the child. Until biological paternity is established, an alleged father's claims of Indian heritage do not trigger any ICWA notice requirement because, absent a biological connection, the child cannot claim Indian heritage through the alleged father."].)

We note that at no time did H.V. acknowledge any connection to D.D., much less show that he was an interested person in the dependency proceedings. Mother merely suggesting that H.V. may be the biological father of D.D. was not enough to trigger ICWA inquiry and it is not clear from the record that he was an interested person as he never appeared in court or expressed any interest in D.D. We need not resolve the issue

---

[7] We recognize that the maternal uncle was not named and that the Department may not be able to locate him upon remand. The Department shall make its best effort to locate the maternal uncle and document its efforts.

of whether CFS had an initial duty to inquire of H.V., as we have ordered conditional remand for CFS to inquire of the maternal uncle who was present at the section 366.26 hearing. Upon remand, it seems reasonable for CFS to also inquire of H.V., assuming he is reasonably available and willing to disclose his Indian status to CFS. Again, CFS shall make its best efforts to locate H.V. and document its efforts upon remand.

C.     FURTHER INQUIRY UNDER SECTION 224.2, SUBDIVISION (E)

Since we have determined that remand is appropriate for CFS and the juvenile court to conduct further inquiry, we must determine if CFS, upon remand, is required to provide further information regarding the notice it gave to the BIA, Cheyenne and Cherokee tribes. Mother insists that CFS had a duty to provide the information it provided to the BIA and tribes so that the juvenile court could evaluate if proper notice was given in order for the BIA and tribes to determine if Minors were part of the tribes.

CFS insists that the duty of further inquiry was not triggered in this case because prior cases involving siblings disclosed that the family was not eligible for membership in the Cheyenne or Cherokee tribes. In three of Minors' siblings' cases, the record noted that Mother had identified the Cherokee and Cheyenne tribes and that notice had been initiated. No further information is in the record other than that parental rights were terminated evidencing that no Indian ancestry was found. CFS insists it was clear that there was no Cheyenne or Cherokee ancestry. CFS concludes that based on the prior findings, and the family's failure to raise, in this case, that they were part of the Cherokee and Cheyenne tribes, the duty of further inquiry was not triggered in this case.

16

Additionally, if there was a duty of further inquiry, CFS provided the proper information to the juvenile court as required by section 224.2, subdivision (e)(2)(B).

Even if we assume the duty of further inquiry was triggered by the identification of the tribes in the prior cases, no further information was required to be given to the juvenile court. Here, CFS had a "reason to believe" that Minors may be part of the Cherokee and Cheyenne tribes. "A 'reason to believe' the minor is an Indian child triggers requirements less rigorous than does a 'reason to know.' " (*In re M.W.* (2020) 49 Cal.App.5th 1034, 1047.)

CFS only had information from the siblings' cases and no family member in the instant case involving Minors had identified the Cheyenne and Cherokee tribes. Additionally, the prior cases had found no Indian ancestry with the Cherokee and Cheyenne tribes had been shown. In fact, Mother concedes CFS only had a reason to believe that Minors were Indian children.[8] As such, the inquiry provisions of section 224.2, subdivision (e)[9] apply.

In *In re M.W.*, *supra*, 49 Cal.App.5th 1034, the court held that "section 224.2, subdivision (e) does not require that any extensive or particular formal documentation of ICWA inquiry be provided to the tribe. Subdivision (e)(3) of that section provides that contact with the tribe 'shall include sharing information identified by the tribe as

---

[8] Mother refers to section 224.3, subdivision (a), but those provisions only apply when there is a reason to know a child is an Indian child.

[9] We set forth the language of section 224.2, subdivision (e), *ante*.

necessary for the tribe to make a membership or eligibility determination.'  Similarly, section 224.2, subdivision (e) does not require that [CFS] report its inquiry efforts to the juvenile court in the form of a declaration or in any particular form at all." (*Id.* at p. 1046, italics omitted.)  A report detailing the interviews of family members regarding ICWA, evidence the tribes were contacted, and detailing the responses, or lack of responses received, was sufficient to support the juvenile court's findings that further inquiry was adequate.  (*Id.* at pp. 1046-1047.)  California Rules of Court, rule 5.481(a)(5), provides that CFS shall "on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes.  Whenever new information is received, that information must be expeditiously provided to the tribes."  It also does not require that CFS provide details of the specific information it provided to the tribes.

CFS only needed to provide to the juvenile court that it had contacted extended family members, which it did here by contacting MGM and maternal aunts.  It also needed to contact the tribes by telephone or electronic mail and provide proof, which it did by filing the certified mailing receipts.  Finally, CFS needed to show the results of the inquiry, which it did by providing the responses of two of the tribes and that the notices were all received by the other tribes, but they did not respond.  No further information was required to be provided to the juvenile court based on the current law, and no further information needs to be shown upon remand.

18

# DISPOSITION

The order terminating parental rights is conditionally reversed, and the matter is remanded to the juvenile court for compliance with the initial inquiry requirements of section 224.2, subdivision (b)(2) only. If the juvenile court, after adequate further inquiry, concludes that ICWA does not apply, then the court shall reinstate the order terminating parental rights. If the juvenile court concludes that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
              Acting P. J.

FIELDS
              J.